UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Sheng-Wen Cheng,                                        Case No. 23-cv-0485 (WMW/DLM)

                Plaintiff,

                                            **ORDER**

v.

P. Grenier and The United States
of America,

                Defendants.

P. Grenier and the United States of America (collectively "Defendants") seek dismissal for lack of subject-matter jurisdiction or for failure to state a claim.[1] (Dkt. 46.) For the reasons addressed below, the Court grants Defendants' motion to dismiss.

## BACKGROUND

Plaintiff Sheng-Wen Cheng ("Cheng") is a federal inmate serving a 72-month sentence for fraud against the United States. Cheng is incarcerated at FMC Rochester and commenced this action against P. Grenier ("Grenier"), a counselor employed by the Federal Bureau of Prisons ("BOP") at FCI Sandstone, and the United States of America. Cheng sues Grenier in his individual capacity and his official capacity.

When Cheng commenced this action on March 1, 2023, he was incarcerated at FCI Sandstone. Cheng sought a Temporary Restraining Order/Preliminary Injunction, asking

---

[1] Alternatively, Defendants move for summary judgment. Because Defendants failed to seek permission to file an early motion for summary judgment following this Court's September 18, 2023 Order, (Dkt. 59), Defendants' alternative argument to dismiss Cheng's claims under Rule 56 will not be considered.

for Grenier to be suspended or terminated. Cheng was then transferred to FMC Rochester. Cheng amended his complaint after the transfer and refiled his motion for injunctive relief. This Court denied Cheng's motion for a Temporary Restraining Order/Preliminary Injunction.

In Cheng's amended complaint, he alleges that, between November 2022 and February 2023, Grenier thwarted his attempts to utilize the administrative process under the Prison Litigation Reform Act ("PLRA") and limited his access to the courts. Specifically, among several other allegations, Cheng alleges that Grenier threatened to move Cheng to an inferior housing unit if Cheng submitted an informal resolution ("BP-8"), intentionally told Cheng to "get lost" while Cheng was waiting for his case manager's assistance in making copies of necessary documents, failed to respond to Cheng's BP-8s, failed to provide Cheng with an administrative remedy request form ("BP-9"), provided Cheng incorrect forms, and refused to respond to Cheng's requests that are relevant to Cheng's ongoing lawsuits.

Cheng alleges in his amended complaint that Grenier's actions and failure to respond to Cheng's requests violated Cheng's First Amendment rights and his Fifth Amendment right to due process, causing Cheng irreparable harm. Cheng requests injunctive relief, specifically for Grenier to be suspended or terminated from his position.[2]

---

[2] As Cheng concedes that his request for declaratory judgment and injunctive relief is moot after his transfer from FCI Sandstone to FMC Rochester, (Dkt. 63 at 8), this Court will not address these claims.

2

Defendants move to dismiss Cheng's complaint for lack of subject-matter jurisdiction, Fed. R. Civ. P. 12(b)(1), and for failure to state a claim, Fed. R. Civ. P. 12(b)(6).

## ANALYSIS

Cheng's complaint includes five claims: two violations of the First Amendment to the United States Constitution (retaliation and right to petition); a violation of the Fifth Amendment to the United States Constitution (due process); and two torts (negligence and misrepresentation). Defendants move to dismiss the complaint on three bases: the Court lacks subject-matter jurisdiction over each of Cheng's claims, Cheng has failed to state a claim, and there are no genuine issues of material fact. Cheng opposes the motion as to each claim.

When subject-matter jurisdiction is challenged, the court can consider matters outside the pleadings. *Osborn v. United States*, 918 F.2d 724, 729 (8th Cir. 1990). A defendant may challenge a plaintiff's complaint for lack of subject-matter jurisdiction either on the face of the complaint or on the factual truthfulness of the complaint's averments. *See* Fed. R. Civ. P. 12(b)(1); *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993). In a facial challenge, as presented here, the nonmoving party "receives the same protections as it would defending against a motion brought under Rule 12(b)(6)." *Osborn*, 918 F.2d at 729 n.6. Under Rule 12(b)(6), a complaint must allege sufficient facts that, when accepted as true, state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). When determining whether the complaint states such a claim, a district court accepts as

true all factual allegations in the complaint and draws all reasonable inferences in the plaintiff's favor. *Blankenship v. USA Truck, Inc.*, 601 F.3d 852, 853 (8th Cir. 2010).

I. **Exhaustion of Administrative Remedies**

Defendants contend that Cheng's claims must be dismissed because he has failed to exhaust his administrative remedies. Cheng maintains that his failure to exhaust should be excused because Grenier made the administrative process unavailable to Cheng, despite Cheng's attempts to exhaust his administrative remedies. Defendants respond that Cheng's argument lacks sufficient evidentiary support.

Before filing a lawsuit objecting to prison conditions, an inmate must exhaust administrative remedies. 42 U.S.C § 1997e(a). The PLRA provides that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." *Id.* The PLRA requires inmates to exhaust their available administrative remedies fully and properly as to each claim in the complaint before filing an action in federal court. *Woodford v. Ngo*, 548 U.S. 81, 93 (2006); *Johnson v. Jones*, 340 F.3d 624, 627-28 (8th Cir. 2003); *see also Muhammad v. Mayfield*, 933 F.3d 993, 1000 (8th Cir. 2019). The purpose of this requirement is "to reduce the quantity and improve the quality of prisoner suits" by giving "corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter v. Nussle*, 534 U.S. 516, 524-25 (2002). A case must be dismissed when an inmate fails to exhaust available administrative remedies before initiating a lawsuit. *Johnson*, 340 F.3d at 627; *Robley v. Anderson*, No. 02-cv-4199

4

(JRT/RLE), 2004 WL 742089, at *2 (D. Minn. Mar. 4, 2004) (explaining that "[t]he PLRA's exhaustion requirement is mandatory"). In addition, the PLRA requires "proper exhaustion." *Woodford*, 548 U.S. at 93. "Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules. . . ." *Id.* at 90. The failure to exhaust administrative remedies is an affirmative defense that the Defendants must plead and prove. *Nerness v. Johnson*, 401 F.3d 874, 876 (8th Cir. 2005).

"For exhaustion of remedies to serve its purposes, those remedies must be 'available.'" *Spencer v. Warden FPC Duluth*, 13-177 JNE/JJK, 2014 WL 5106741, at *3 (D. Minn. Oct. 10, 2014). Remedies are unavailable if the prison prevents prisoners from exhausting. *Miller v. Norris*, 247 F.3d 736, 740 (8th Cir. 2001). A prisoner's subjective belief that the procedures are unavailable is insufficient to establish unavailability. *Lyon v. Vande Krol*, 305 F.3d 806, 809 (8th Cir. 2002). However, the Eighth Circuit, when considering a motion to dismiss, found the allegation that a prison official refused to respond to a prisoner's informal resolution (BP-8) raised an inference that administrative remedies were made unavailable to the prisoner. *Foulk v. Charrier*, 262 F.3d 687, 698 (8th Cir. 2001). Additionally, a prisoner's allegations that he never received his requested administrative grievance form may be sufficient to "raise an inference that he was prevented from utilizing the prison's administrative remedies." *Miller*, 247 F.3d at 740.

To survive Defendants' motion to dismiss, Cheng must plead sufficient facts to raise an inference that the administrative process was unavailable to him or that he was prevented from utilizing the administrative process.

Cheng alleges that Grenier, his counselor, thwarted Cheng's efforts to exhaust his administrative remedies by failing to respond to the BP-8 forms Cheng submitted and by refusing to provide Cheng the BP-9 forms he requested. In his declaration, Cheng supports these allegations by swearing that "Grenier was the person with the only authority who could provide me with a BP-9 while I was at FCI Sandstone" and "[w]ithout a BP-9 form provided by Grenier, I cannot submit any administrative remedy to the Warden of FCI Sandstone or other prison employees at FCI Sandstone." (Dkt. 64 ¶¶ 7, 8.) Defendants contend that Cheng's declaration is insufficient proof that Grenier made administrative remedies unavailable to Cheng. Defendants also disagree with Cheng, and through a declaration submitted by a BOP paralegal, swear that "any correctional/unit counselor can provide the administrative remedy request forms to inmates, and at FCI-Sandstone there are several correctional/unit counselors in addition to Defendant P. Grenier." (Dkt. 67 ¶ 9.) However, according to the BOP Administrative Remedy Program Statement, "ordinarily" the correctional counselor provides the inmate the appropriate form.[3] (Dkt. 50-4 at 5.)

Considering the BOP Administrative Remedy Program Statement and the parties' conflicting declarations, this Court finds that Cheng has pled sufficient facts to raise an inference that the administrative process was unavailable to him. For this reason, the Court lacks a factual basis to dismiss for Cheng's failure to exhaust administrative remedies.

---

[3] *Administrative Remedy Program Statement*, U.S. Department of Justice Federal Bureau of Prisons, 5 (2014), https://www.bop.gov/policy/progstat/1330_018.pdf.

## II. *Bivens* Claims

Cheng urges this Court to recognize his First Amendment and Fifth Amendment claims under *Bivens v. Six Unknown Named Agents of Fed. Bureau of Narcotics*, 403 U.S. 388 (1971). While conceding that his First Amendment and Fifth Amendment claims arise in new contexts, Cheng argues that special factors warrant recognizing his claims under *Bivens*. Defendants disagree, arguing that special factors "counsel hesitation" rather than support recognizing Cheng's claims under *Bivens*.

The Supreme Court of the United States has recognized a cause of action under *Bivens* three times. *Carlson v. Green*, 446 U.S. 14 (1980) (recognizing an Eighth Amendment claim); *Davis v. Passman*, 442 U.S. 228 (1979) (recognizing a Fifth Amendment claim for gender discrimination); *Bivens*, 403 U.S. 388 (recognizing a Fourth Amendment claim). Whether an implied cause of action is available under *Bivens* is a two-step inquiry. *Farah v. Weyker*, 926 F.3d 492, 498 (8th Cir. 2019). First, the court determines whether Cheng's claims present one of "the three *Bivens* claims the Court has [found] in the past," or whether Cheng's claims arise in a "new context." *Ziglar v. Abbasi*, 582 U.S. 120, 140 (2017). If Cheng's claims arise in a new context, the Court proceeds to Step two, which requires the court to determine whether "any special factors counsel hesitation before implying a new cause of action." *Farah*, 926 F.3d at 498 (internal quotation marks omitted). If there are reasons to pause, and as the Eighth Circuit noted in *Farah*, "[i]t does not take much to make [the Court] pause," the Court must refuse to find an implied cause of action. *Id.* at 500-01. Special factors to consider include economic and governmental concerns, such as: "(1) the cost of defending claims against federal

7

officials; (2) the responsibility of Congress to determine whether monetary and other liabilities should be imposed upon federal actors; and (3) the time, administrative costs, and other resources used during a lengthy period of litigation." *Pinson v. Hadaway*, 2020 WL 6121357, at *8 (citing *Abbasi*, 582 U.S. at 133-34). Additional special factors to consider include Congress's actions, specifically, "whether Congress has taken other action in the area without authorizing a damages remedy, and whether a 'remedial structure' is already in place to address constitutional violations." *Farah*, 926 F.3d at 500 (quoting *Abbasi*, 582 U.S. at 141) (internal citations omitted). "[I]f Congress has created 'any alternative, existing process for protecting the [injured party's] interest' that itself may 'amoun[t] to a convincing reason for the Judicial Branch to refrain from providing a new and freestanding remedy in damages.'" *Abbasi*, 582 U.S. at 137 (quoting *Wilkie v. Robbins*, 551 U.S. 537, 550 (2007)).

Cheng concedes that his claims arise in new contexts. This Court, therefore, proceeds to Step two. The economic and governmental concerns favor not finding an implied cause of action under *Bivens*. In these contexts, the extension of *Bivens* risks "burdening and interfering with the executive branch's investigative and prosecutorial functions." *Farah*, 926 F.3d at 500. Recognizing such claims in these contexts also would likely exponentially increase litigation against BOP officials, further increasing the resources consumed during a lengthy period of litigation.

The special factors regarding Congress's actions also weigh against finding an implied cause of action under *Bivens*. Congress passed the PLRA which requires inmates to exhaust their administrative remedies prior to filing a civil rights lawsuit, allowing

8

inmates to seek redress through the BOP hierarchy. 42 U.S.C. § 1997e(a). Although the administrative remedy process does not authorize a damages remedy, it does provide inmates an avenue for redress for "allegedly unconstitutional actions and policies." *Corr. Servs. Corp. v. Malesko*, 534 U.S. 61, 74 (2001). The Federal Torts Claims Act ("FTCA") provides an additional remedial structure for an inmate's grievances. The FTCA allows individuals injured by the negligent acts or omissions of federal employees acting within the scope of their employment to recover for their injuries by bringing a claim against the United States. 28 U.S.C. § 2679(b)(1); *Hinsley v. Standing Rock Child Protective Servs.*, 516 F.3d 668, 671-72 (8th Cir. 2008) (citing 28 U.S.C. § 1346(b)). Although Cheng is correct that an inmate cannot recover for intentional acts or omission of a federal employee under the FTCA, and that actions under the FTCA can be brought only against the official in their official capacity, not individual capacity, the FTCA still provides a "remedial structure" to address constitutional violations. That these remedies do not provide the same form of relief as a *Bivens* action is immaterial. *See Malesko*, 534 U.S. at 69 ("So long as the plaintiff had an avenue for some redress, bedrock principles of separation of powers foreclosed judicial imposition of a new substantive liability."); *Farah*, 926 F.3d at 502 (noting that the Supreme Court "has since made clear that even remedies that provide no compensation for victims and little deterrence for violators . . . trigger the general rule that 'when alternative methods of relief are available, a *Bivens* remedy usually is not.'") (quoting *Abbasi*, 582 U.S. at 145).

   Because Congress is best suited to weigh the costs and benefits of creating a new substantive legal liability, and the special factors weigh in favor of not finding an implied

9

cause of action under *Bivens*, the Court dismisses Cheng's claims against Grenier in his individual capacity.

### III.     Federal Tort Claims Act Claims

Cheng raises two claims under the FTCA: negligence and misrepresentation. Defendants argue that Cheng's negligence claim must be dismissed because Cheng failed to exhaust his administrative remedies as required under the FTCA, and Cheng's misrepresentation claim must be dismissed because it is not cognizable under the FTCA. Cheng does not rebut Defendant's argument regarding his misrepresentation claim. But Cheng argues that he did exhaust his administrative remedies as required by the FTCA for his negligence claim.

The United States and its agencies are immune from suit unless the United States waives its sovereign immunity. *Fed. Deposit Ins. Corp. v. Meyer*, 510 U.S. 471, 475 (1994). If the United States does not waive sovereign immunity, a federal court does not have subject-matter jurisdiction over the claims brought against the United States. *Id.* The FTCA provides a limited waiver of the United States's sovereign immunity, allowing persons injured by federal employees to sue the United States for damages in federal court. *Mader v. United States*, 654 F.3d 794, 797 (8th Cir. 2011). Specifically, the FTCA allows lawsuits for "'injury or loss of property or personal injury or death caused by the negligent or wrongful act or omission' of federal employees acting within the scope of their employment." 28 U.S.C. § 2675(a). It does not allow lawsuits for claims arising out of misrepresentation. *See* 28 U.S.C. § 2680(h).

To bring a lawsuit under the FTCA, the claimants must first exhaust their administrative remedies. *Mader*, 654 F.3d at 797; 28 U.S.C. § 2675(a). The exhaustion requirement requires "complete exhaustion," meaning the claim has "been finally denied by the agency in writing and sent to the claimant by certified or registered mail" before the claimant files a lawsuit in federal court. 28 U.S.C. § 2675(a). Or if the agency fails "to make a final disposition within six months" after the claimant's filing, the grievance may be considered denied and the FTCA's administrative remedies exhausted. *Id.* Exhaustion is not complete if the lawsuit is initiated before the grievance has been denied or the six-month period has elapsed. *Id.*; *Johnson v. U.S. Dep't of Def.*, No. 99-cv-1699 (DWF/AJB), 2000 WL 33956225, at *2 (D. Minn. Oct. 17, 2000). The filing date of the original complaint is the operative date for exhaustion, not the date of an amended complaint. *Askar v. Hennepin Cnty.*, 600 F. Supp. 3d 948, 955-56 (D. Minn. 2022).

The Court does not have subject-matter jurisdiction over either of Cheng's tort claims. Subject-matter jurisdiction is absent for Cheng's misrepresentation claim because the claim is not cognizable under the FTCA, as the FTCA does not allow lawsuits for claims arising out of misrepresentation. 28 U.S.C. § 2680(h).

The Court similarly lacks jurisdiction over Cheng's negligence claim because he has failed to exhaust his administrative remedies as is required under the FTCA. Cheng filed this lawsuit on March 1, 2023 and filed his tort grievance with FCI Sandstone on May 8, 2023. As of Cheng's surreply filing on December 5, 2023, the BOP (the relevant agency) has not denied in writing his tort grievance. And even though Cheng's tort grievance is

now considered "denied" as the BOP has failed "to make a final disposition within six months," Cheng filed this lawsuit prematurely. *Johnson*, 2000 WL 33956225, at *2.

Therefore, because this Court lacks subject-matter jurisdiction over Cheng's tort claims, they are dismissed.

## CONCLUSION

Cheng has failed to plead sufficient facts to state a claim under *Bivens*, and the Court lacks subject-matter jurisdiction over his tort claims. Defendants' motion to dismiss, therefore, is granted.

## ORDER

Based on the foregoing analysis and all the files, records and proceedings herein, **IT IS HEREBY ORDERED:**

1. Defendants' motion to dismiss, (Dkt. 46), is **GRANTED.**

2. Cheng's claims one, two and three are **DISMISSED WITH PREJUDICE**.

3. Cheng's claims four and five are **DISMISSED WITHOUT PREJUDICE.**

**LET JUDGMENT BE ENTERED ACCORDIGNLY.**

Dated: January 16, 2024                    s/ Wilhelmina M. Wright
                                           Wilhelmina M. Wright
                                           United States District Judge